BEVERS et al. v. WINFREY et al.
(No. 1089.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 26, 1924. Rehearing Denied Feb. 28, 1924. Appellees' Motion for Rehearing Denied March 3, 1924.)

1. Schools and school districts ⊚=47—Review by school boards of action of subordinate authorities.

The Legislature has provided a method by which all questions affecting the administration of the school law shall be reviewed first by the school authorities, giving to all aggrieved parties the right to appeal from the decisions of subordinate boards to the highest authority within the school system, the state board of education, and there is no limitation on the authority of these boards to review the action of subordinate school authorities on the different questions arising in the administration of the school law, whether such action be of a discretionary nature or purely ministerial.

2. Schools and school districts ⊚=20—Courts have no jurisdiction of matters growing out of administration of school laws until remedies exhausted.

The courts have no jurisdiction of any matter growing out of an administration of the school laws until the aggrieved party has prosecuted his appeal through the boards provided by law for that purpose.

3. Schools and school districts ⊚=20—Location of high school to be first determined by school authority, and courts without jurisdiction until appeal.

Determination of the question of the location of a high school is a matter of administration of school laws, and courts have no jurisdiction until the aggrieved party has prosecuted an appeal through the various boards and officers provided by law for that purpose.

4. Schools and school districts ⊚=68—Effect of order by state board of education.

A final order made by the state board of education on appeal from decisions of subordinate boards and authorities is binding on all interested parties as fully and as completely as a judgment of a court of competent jurisdiction, and such order must be obeyed in all its forms, unless modified or set aside by an appeal to the courts.

5. Schools and school districts ⊚=68—Order of state board locating high school held not void for indefiniteness.

An order of the state board of education on appeal, in controversy as to location of high school, "half way between" two towns, held not void as being indefinite and uncertain.

6. Schools and school districts ⊚=47—Answer held not direct attack on order of state superintendent.

In an action against trustees of independent school district to restrain the construction of a high school in a certain place, and not in place provided by final order of state superintendent, held, that answer was in no sense an appeal from, or a direct attack against, the order of the superintendent.

7. Schools and school districts ⊚=68—Trustees could not disregard order of state board as to location of high school.

Where controversy arose as to location of high school, and the matter was appealed finally to the state board of education, which ordered location in a certain place, the trustees, without the setting aside of such order, were without authority to construct the high school at any other point, and contractor, knowing of the controversy and the decision, was not entitled to relief in a suit to enjoin the construction of the building at any other point.

On Appellees' Motion for Rehearing.

8. Mandamus ⊚=154(2), 168(2) — Applicants must affirmatively plead and prove facts entitling them to writ.

The burden rests upon those applying for mandamus to plead and prove affirmatively all facts necessary to entitle them to the writ, and also by pleading and proof to negative all defensive facts.

9. Evidence ⊚=83(1)—Presumed state superintendent determined all fact issues in favor of decision.

Where state superintendent of education entered a final order on appeal in a controversy as to the location of a high school, it must be presumed, in an action to enjoin the construction of a school at any other point, that all issues of fact were determined in favor of such order.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Suit by O. L. Winfrey and others against O. P. Bevers and others for mandatory injunction. Judgment for plaintiffs, and defendants appeal. Reversed, and remanded for new trial.

Singleton & Bevil, of Kountze, for appellants.

J. Llewellyn and E. B. Pickett, Jr., both of Liberty, for appellees.

PER CURIAM. Hull and Daisetta are two prosperous towns about two miles apart in the Hull independent school district of Liberty county, which contains about 19,000 acres of land, and was so incorporated by

⊚=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the Thirty-Seventh Legislature. Acts 1921, c. 74. Hull has a population of about 1,000, and Daisetta is larger and has a larger voting population. During the year 1922 the Hull independent school district voted a bond issue in the sum of $100,000 "for constructing and equipping a high school building." This case grows out of a dispute between the two towns on the location of the high school. The trustees of the Hull independent school district, in the discharge of their duties, acquired four acres of land in the town of Daisetta, about 2¼ miles from the town of Hull, and dedicated it to this purpose. Also they entered an order providing for a grammar school at Hull and a high school at Daisetta, pending the settlement of the school question. The citizens of Hull duly appealed from this order to the county superintendent, who disposed of the issues before him by the following order:

"In the Matter of Appeal of S. E. Bevers et al. v. O. L. Winfrey et al.

"Hull Independent School District, Liberty County, Texas.

"Be it remembered that on the 10th day of January, A. D. 1923, the above-entitled matter came on for consideration before me, all parties appearing in person and by attorneys. All demurrers and exceptions urged by the respondents O. L. Winfrey et al. were overruled, and I believe and decide that this case is properly before me, on appeal from the orders of the board of school trustees of the Hull independent school district, to which order and ruling respondents excepted.

"After the evidence and argument of counsel, on this the 11th day of January, A. D. 1923, I am of the opinion that at this time and under present circumstances, the high school building should be located and erected upon the Humble four-acre tract heretofore purchased and fully paid for by the Hull independent school district, for, among others, the following reasons, to wit:

"(1) Because said point is approximately the geographical center of the district in question, and (2) because it is a high well-drained suitable ground for such building and school campus, etc. Further, I decide and find that the point west of the public road approximately 1,682 feet from the north line of the Chas. Underton survey is not a desirable or proper place for the erection of a permanent High School building in said district.

"Further, I find that the respondents herein, O. L. Winfrey et al., were not guilty of fraud, gross abuse of discretion, or moral delinquency when they decided to purchase the Humble four-acre tract for the purpose of erecting thereon the high school building contemplated when the bonds in question were voted and issued.

"Further, the question of how this $100,000 bond money is to be apportioned or used by the Hull independent school district is not raised by the pleadings in this case. As a matter of adjustment of the differences between the patrons and school trustees of this district, I recommend that a high school building be erected on the Humble four-acre tract, and a grammar school building of a permanent nature, of brick if possible, and of such size as will adequately care for such students as may be attending the school maintained in the town of Hull proper, consisting of a building of seven or eight rooms, be erected in the town of Hull proper to avoid the necessity of the smaller children residing at Hull having to go to the high school at Daisetta, as only one road seems to be available for use between the two places, which carries heavy traffic through a low, wet, marshy section. Manifestly, the details and the cost of construction of the buildings to be erected in the Hull independent school district, whether the high school building or any other buildings, cannot be determined at this time, but must be left largely to the discretion of those in authority under the law passing upon such matters, but I believe that the amount of money now on hand with the treasurer of the Hull independent school district is sufficient to erect a proper high school building on the four-acre tract above mentioned and to give to the grammar school building to be erected at Hull a brick building.

"Given under my official hand, this 11th day of January, A. D. 1923. [Signed] V. W. Carter, Supt. of Schools, Liberty County, Texas."

The citizens of Hull prosecuted their appeal to the county school board of trustees from the decision of the county superintendent, which board sustained the county superintendent by the following orders:

"S. E. Bevers et al. v. O. L. Winfrey et al.

"Before the County School Board of Liberty County, Texas. February 10, 1923.

"After hearing the testimony before the county superintendent and taking into consideration the testimony submitted before us, and after a visit to the Hull independent school district, and viewing the situation, we unanimously sustain the county superintendent's ruling in definite form.

"We unanimously rule that a high school building be established on the Humble four-acre tract, and a primary school be built at Hull, consisting of seven or eight rooms. Both buildings to be of substantial nature of brick or concrete.

"We also ask that the injunction be dissolved. "[Signed] W. F. Van Dorn, President."

"Called Session of the County Board of Trustees.

"County of Liberty, State of Texas.

"February 17, 1923.

"We, the county school board of trustees of Liberty county, met for the purpose of granting a new hearing to said W. W. Cruse on his petition dated February 10, 1923.

"No new evidence produced.

"After hearing counsel from both sides the meeting adjourned, and the board went into executive session with W. F. Van Dorn, president, and G. H. Bailey, secretary.

"We unanimously vote that the school board of the Hull independent district erect a high school building at Daisetta, on the Humble tract, and a grammar school at Hull of eight rooms, both buildings to be of substantial construction either brick, tile, or concrete. We ask that the injunction be dissolved, on the ground that from general observation of this

board by which we found that the wants and needs of the school children were in some cases inadequately supplied.

"We pray for immediate relief.

"[Signed]   G. H. Bailey, Secretary.

"W. F. Van Dorn, President."

The Hull citizens then prosecuted their appeal to the state superintendent of public instruction, who entered the following order on the issues before him:

"In re S. E. Bevers et al. v. O. L. Winfrey et al.

"State of Texas, County of Travis—ss.:

"The above-mentioned case relates to the location of a high school building in the Hull independent school district in Liberty county, Texas.

"A trial of this case has been held before the county superintendent of schools of Liberty county and the county board of school trustees of said county. The material facts developed in the trial of the case are as follows:

"1. The Hull independent school district issued bonds for the purpose of constructing and equipping a high school building for the school of said district.

"2. The oil town of Daisetta is located about two miles from the town of Hull, and at the present time has a school with an enrollment of about 300; the school in the town of Hull has an enrollment of 180, and a one-teacher school south of Daisetta has an enrollment of approximately 30.

"3. Bonds for constructing and equipping a high school building have been issued and sold.

"4. It is claimed by appellees that the building should be located in the town of Daisetta: First, because this location would be more convenient to the larger number of children within the district; second, for the reason that the land has a greater elevation in Daisetta than in the town of Hull or between the two towns; and, third, the board of trustees has secured title in fee simple to four acres of land as a suitable site for the building.

"The appellants claim that the town of Daisetta, being an oil town, is temporary in the character of its population; that no permanent buildings have been erected in said town; that the residents are transient and should not be permitted to determine the location of an expensive school building for the future when there is no assurance that the town is permanent. They also claim that a suitable site can be secured either one-half mile south of the town of Hull or approximately one mile south of said town, which latter location would be about midway between the towns of Hull and Daisetta; that the town of Hull is on the railroad, that it has a bank, post office, brick buildings, and other indications of permanency.

"The county superintendent of Liberty county decided that two buildings should be constructed, one a grammar school in the town of Hull, and the other a high school in the town of Daisetta. The county school board, after making a personal examination of the sites in question, sustained the decision of the county superintendent of public instruction, and additional testimony was taken, a transcript of which was made and became a part of the record.

"An examination of the transcript of the bond record in the office of the comptroller of the state of Texas disclosed the fact that the citizens when voting for the bonds intended the proceeds to be used 'for constructing and equipping a high school building' and the decision of the county superintendent and of the county board of trustees was therefore void, as it was not in accordance with the will of the property taxpayers of said district as expressed in the election when the bonds were issued. This decision to construct two buildings is therefore not sustained.

"Inasmuch as only one building can be constructed, and inasmuch as it appears that the town of Hull is more permanent in the character of its population and the material used in the construction of its buildings than the town of Daisetta, it appears to the best interest of all of the children of said district that one building be erected according to the terms of the bond election, and that said building be located as nearly as possible half way between the town of Hull and the town of Daisetta.

"Given under my hand and seal of office, this the 29th day of May, A. D. 1923. [Signed] S. M. N. Marrs, State Superintendent. [Seal.]"

From the decision of the state superintendent, the trustees prosecuted their appeal to the state board of education, who entered the following order sustaining the state superintendent:

"The board proceeded to consider the appeal case of S. E. Bevers et al. versus O. L. Winfrey, concerning the location of a school building in Hull independent school district, of Liberty county, Texas.

"Judge Llewellyn represented O. L. Winfrey et al. and Mr. T. B. Coe represented S. E. Bevers et al. Judge Llewellyn presented to the board a brief, which was filed with the record of the case. The board was addressed alternately by Judge Llewellyn and Mr. Coe. After having heard the attorneys of each side, the board recessed until 2 p. m.

"At 2 p. m. the board met and considered the case above described. The state superintendent in his decision of May 29, 1923, declared, 'Inasmuch as only one building can be constructed and inasmuch as it appears that the town of Hull is more permanent in the character of its population and the material used in the construction of its buildings than the town of Daisetta it appears to the best interest of all of the children of said district that one building be erected according to the terms of the bond election, and that said building be located as nearly as possible half way between the town of Hull and the town of Daisetta.' The board voted unanimously to sustain the decision of the state superintendent in the matter, and it was so ordered.

"I, S. M. N. Marrs, state superintendent of public instruction and ex officio secretary to the state board of education hereby certify that the above is a true and correct copy of the minutes of the state board of education, in regard to the case of 'S. E. Bevers versus O. L. Winfrey' at the meeting held June 22, A. D. 1923, in the office of the Governor.

"Given under my hand and seal of office, this the 25th day of June, A. D. 1923. S. M. N.

Marrs, State Superintendent and Secretary to thé State Board of Education. [Seal.]"

No further action was taken by the board of trustees of Hull independent school district, nor did they file suit to vacate the order of the board, but proceeded to advertise for the erection of a high school building. Thereupon the appellees here, representing the interests of Hull citizens, filed this suit against the Hull independent school district, and its trustees, alleging, in substance, the facts as set forth above, and shown by the different orders, concluding their petition as follows:

"These plaintiffs say that the matter of the location of said building has been fully and finally determined by the forum created by the statutes of the state of Texas, and is therefore binding upon all parties to the controversy.

"That the defendants, in violation of their duty and of the judgment and decision of the state board of education above referred to, and in violation of their rights of the citizenship of said independent school district are now advertising for bids for the construction of a high school building in said school district, without naming or specifying any location for the same.

"These plaintiffs charge on information and belief that it is the intention of said trustees to wholly disregard the decision and judgment of the state board of education as hereinbefore set out and to proceed to have said building erected, not halfway between Hull and Daisetta as is their duty to do, but to locate and erect the same on a certain four-acre tract of land which is southwest of Daisetta and is a part of the Smith 127-acre tract on the Jessie De Vore league, and known as the Humble four-acre location, and is a distance of more than two miles from the town of Hull. Under the terms of said advertisement said board of trustees are to receive bids for said building on the 10th day of August, 1923; and, unless restrained by your honor's most gracious writ of injunction, they will proceed in violation of their plain duty and in violation of the rights of these plaintiffs, and in violation of the terms of the said judgment of the state superintendent and the state board of education to let a contract for the erection of said building at said location as above described, which is more than one mile from the location designated by said superintendent and the state board of education.

"That on the 28th day of May, 1923, said school board passed an order to the effect that during the school term of 1923 and 1924 all of the grades from the seventh to the eleventh, inclusive, attend high school at Daisetta, and that school be maintained at Hull from the first to the sixth grades, inclusive, and at Oakdale from the first to the sixth grades, inclusive. That a protest was filed with said board and a petition presented praying that said order be rescinded. That said protest was set down for a hearing, and was heard on July 5, 1923, and said board rendered its decision of July 16th, 1923, refusing the petition, and declining to rescind said order from which decision an appeal was seasonably prosecuted to the state superintendent of public instruction at Austin, Texas, and is now pending before said superintendent. A copy of said order and protest is hereto attached marked Exhibit B and C, respectively, and notwithstanding the pendency of said appeal said board is now preparing to open a high school at Daisetta and refusing to make any preparation to open a high school at Hull.

"Premises considered, plaintiffs pray that a temporary writ of injunction issue against the defendants injoining and restraining them from awarding any contract for the erection of a high school building unless and until they shall have designated and secured a location therefor approximately halfway between the town of Hull and Daisetta, also restraining them from spending any of said school money or making any further preparation for a high school at Daisetta pending the decision of the State Superintendent on said appeal.

"That the defendants be cited to appear and answer this petition, and on final hearing that plaintiffs have judgment perpetuating said temporary injunction, and a judgment for a mandatory injunction requiring and commanding the defendants to proceed to obey, observe, and carry out the order and judgment of the state board of education as hereinbefore set out in this petition, and they pray for all such other and further relief, general and special, in law and in equity to which they may be entitled."

On presentation to him of the foregoing petition, the Honorable J. L. Manry, judge of the Ninth judicial district of Texas, entered his fiat as follows:

"In Chambers at Liberty, Texas, August 8th, 1923.

"The foregoing petition was this day presented to me, read and duly considered, and the prayer for a temporary injunction is hereby granted, and the clerk of the district court of Liberty county is ordered to issue such injunction upon the plaintiffs filing with him a good and sufficient bond to be approved by him in the sum of $500, payable and conditioned as required by law."       J. L. Manry,
      "Judge 9th Judicial District of Texas."

This petition was answered by the respondents on the 13th day of August, 1923, by plea in abatement, general demurrer, general denial, and special pleas, as follows:

(1) Admitting the corporate existence of the Hull independent school district, naming the trustees thereof; admitting the bond issue in the sum of $100,000; that the bonds had been sold; that the district had advertised for bids for the erection of the school building; that it had acquired four acres of land for school purposes, at a cost of $1,250 (the land so acquired being land referred to in relators' petition, and which had been in issue before the various school authorities); and admitting that.

(2) That in advertising for bids and in dedicating the four acres to high school purposes, the trustees were "acting only in an honest, fair, and faithful exercise of their discretion and authority as trustees for said district," and "for the best interest of all parties concerned, and for the general wel-

fare and best advantage of every pupil within said school district," etc.

(3) That the proposed site is in the geographical center of the district and easily accessible to the children and patrons, giving the facts as to the size and importance of the Hull oil field and importance of the community adjacent to the proposed site, and that the proposed site would not be disturbed by oil development.

(4) Pleading the facts in relation to the different appeals as set forth above, setting out the concluding portion of the decree entered by the state superintendent.

(5) That a point halfway between the two towns was not suitable for school purposes and certain facts against the location of the school under the order of the state superintendent.

(6) The ninth, tenth, and eleventh paragraphs of respondents' answer is as follows:

(9) "Taking into consideration the subject-matter of the purported litigation then pending before Hon. S. M. N. Marrs and the said state board of education, and the facts germane thereto, and the law with reference to the duties of school trustees and school authorities generally, it is believed that a proper construction of the order made by the said state superintendent and the state board of education when they stated that said building be located as nearly as possible one-half way between the town of Hull and the town of Daisetta, it was simply meant that it should be located at such point or as near thereto as, in the judgment and discretion of the board of school trustees of said district, would be a practical location for said building and would be to the best interest 'of the children and the patrons of the schools in said district, and the legal and correct construction of said order, if it be an order, and the purpose and intent thereof, was to relegate the question of the location of this high school building to the sound discretion of the board of school trustees of said district, where it is lodged in any event under the law."

(10) "That to comply literally with the terms of said purported order and to build a high school building at the point indicated, which is perhaps possible, would be a criminal perversion of the trust funds now in the hands of these defendants and other members of the board of trustees of the Hull independent school district. It would be a violation of the expressed wishes and instructions of a large majority of the qualified voters and patrons of the school residing in said Hull independent school district, as evidenced by their action in elections heretofore held in said district; and to erect such a building at such a point would be violative of the unanimous judgment of the board of school trustees of said district, charged by law and under their oaths with an honest administration of the business of said school district."

(11) "That if said declaration and statement on the part of the state superintendent of public instruction, confirmed by said state board of education, be held to be a judgment or order, then these defendants say the same is of no binding force or effect and is not a judgment binding on them, nor are they required to erect said building at a point one-half way between the town of Daisetta and the town of Hull, for that the school authorities of Texas, the county school superintendent and the board of county school trustees of Liberty county, and the state superintendent of public instruction and the state board of education have no jurisdiction of matters· and things involved in this controversy; that the judgment and action of the local board of trustees of an independent school district is final and conclusive as to matters given into their charge by law, unless their judgment and discretion be exercised arbitrarily and/or fraudulently, and grossly abused, and said school authorities have no jurisdiction to determine the question of fraud or no fraud, or that there has or has not been a gross abuse of authority and discretion, for that the determination of such questions are given exclusively to the courts and to judges and juries; that the jurisdiction of school authorities are as to ministerial matters only and not judicial. ·

"However, if the said school authorities in law have jurisdiction of controversies of this nature, these school authorities in this particular instance had no jurisdiction of this controversy, for that at the time of the institution of the proceedings before the school authorities the Hull independent school district had a population of more than 500 on an appeal, if any, so taken would lie, not to the county superintendent of Liberty county, Texas, but directly to the state superintendent of public instruction of said state; that the complainants in said controversy did not appeal their case, if appeal it was, to the state superintendent of public instruction as required by law, but attempted to appeal same to the county superintendent of said county; and the state superintendent and the said state board of education had no jurisdiction of the case when they attempted to make the order quoted, for that same was not appealed to them within the time required by law, and they had no jurisdiction of an appeal under such circumstances from the orders or judgments of a county school superintendent and a county board of school trustees had no jurisdiction of the controversy that they sought to adjudicate."

Relators concluded with the following prayer:

"Wherefore, defendants pray that the temporary injunction heretofore granted herein on the 8th day of August, 1923, be, upon final hearing hereof, in all things dissolved, set aside, and declared null and void; and further defendants pray that they have judgment against the plaintiffs for costs of suit, and all other and further relief, both legal and equitable, general and special, to which they may be justly entitled."

On a trial of the issues raised by the pleadings of the respective parties, before the court without a jury, the following judgment was entered on the 14th day of August:

"On this the 14th·day of August, 1923, this cause was called for trial, and thereupon came all parties and announced ready for trial, and first came on to be heard the plea in abatement urged by the defendants and the same having been considered was by the court in all things

overruled, to which action of the court the defendants then and there in open court duly excepted; and then came on to be heard defendants' general demurrer to plaintiffs' original petition, and the court having considered same overruled said general demurrer, to which action of the court the defendants then and there in open court duly excepted; and next came on to be heard the general demurrer and special exceptions urged by plaintiffs to the original answer of defendants, and such general demurrer and special exceptions having been considered were by the court all overruled, to which action of the court the plaintiffs then and there in open court duly excepted; and then the case coming on to be heard upon its merits, a jury being waived, all matters of fact as well as' of law were submitted to the court, and the court, having heard the pleadings and the evidence and argument of counsel, is of the opinion that the law is for the defendants, and .that the plaintiffs are not entitled to the injunction sought by them.

"It is therefore ordered, adjudged, and decreed by the court that the temporary injunction heretofore granted herein on the 8th day of August, 1923, be and the same is hereby in all things dissolved, set aside, and held for naught; and further it is ordered, adjudged, and decreed by the· court that the plaintiffs be denied every relief prayed for by them in their petition filed herein and that they take nothing by their suit, and that no injunction of any nature should be issued against the defendants, and that the defendants have and recover of and from the plaintiffs all costs by them in this behalf .incurred for which execution may issue in favor of the officers of court against each party hereto  for all costs by them respectively incurred.   To which judgment of the court the plaintiffs then and there in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas at Beaumont, and they are hereby allowed 90 days after the adjournment of this term of court in which to prepare and file a statement of facts and bills of exception."

Pending the appeal by relators from the judgment of the trial court, on a showing made by them to this court that respondents, acting for the Hull independent school district, had proceeded to let a contract for the erection of the high school building on the four acres of land described by respondents in their answer, and that an execution of the contract would dissipate the subject-matter of this litigation, this court granted an injunction without bond, restraining respondents from proceeding further in the execution of the contract and from expending any of the bond issue in the execution of the contract, which injunction was issued by the clerk of this court on the 22d of October, 1923, and duly served on respondents. Afterwards, as amicus curiæ, Andrew Ness filed a motion before us to dissolve the injunction or to require relator to give bond in a sufficient sum to protect him from damage and loss, alleging that he had entered into the contract in good faith, had expended great

sums of money in attempting to execute the same, and that an enforcement of the injunction would work great injury to him. On a hearing before us, his motion was denied on November 7, 1923. Mr. Ness filed a motion for rehearing against our order. Afterwards the respondents filed a motion to dissolve the injunction, and to dismiss the appeal, which was heard by us on December 20, 1923. In the meantime, the record on its merits has been filed in this court, and by agreement of the parties the cause was duly advanced on our docket, and submitted on oral arguments and briefs from all parties on the 20th of December, 1923, under statement from us that all motions by all the parties would be taken with the case on. its merits.

Under the foregoing statement of this case, we believe the following conclusions dispose of all issues raised by this appeal:

[1] (1) In our judgment, appellants, relators below, have duly prosecuted their appeal through the various and necessary school boards. It seems to be the holding of the courts of this state that the Legislature has provided a method by which all questions affecting the administration of the school laws shall be reviewed, first, by the school authorities, giving to all aggrieved parties the right to appeal from the decisions of the subordinate boards to the highest authority within the school system, which is the state board of education. We do not understand that there is any limitation on the authority of these boards to review the action of subordinate school authorities on the different questions arising in the administration of the school law, whether such action be of a ' discretionary nature or purely ministerial. As we construe the various decisions on this point, both discretionary and ministerial acts have been reviewed by the boards, and their action in so doing sustained by our Supreme Court and Courts of Civil Appeals. This conclusion, we think, is fully sustained by the following authorities: Davis v. Hemphill (Tex. Civ. App.) 243 S. W. 691; Donna School District v. Bank (Tex. Civ. App.) 227 S. W. 974; Adkins v. Heard (Tex. Civ. App.) 163 S. W. 127; McCollum v. Adams. (Tex. Civ. App.) 110 S. W. 526; Seat v. Jones (Tex. Civ. App.) 225 S. W. 208; Trustees v. Dudney (Tex. Civ. App.) 142 S. W. 1007; Watkins v. Huff (Tex. Civ. App.) 63 S. W. 922; Pearsall v. Wools (Tex. Civ. App.) 50 S. W. 959.

[2, 3] (2) The decisions cited supra announce and sustain the proposition that the courts have no jurisdiction of any matter growing out of an administration of the school laws until the aggrieved party has prosecuted his appeal through the boards provided by law for that purpose. This is held to be fundamental, and that the jurisdiction of the courts does not attach until

that has been done. We believe the matters in issue between the citizens of Hull and the trustees of the Hull independent school district come within the letter and spirit of the authorities above cited, and that an appeal from the decision of the board of trustees of said district through the county superintendent, the county board of trustees, the state superintendent, and the state board of education were necessary before the matter could be reviewed by the courts.

[4] (3) A final order, when made, by the state board of education is binding on all interested parties as fully and as completely as a judgment of a court of competent jurisdiction, and such order must be obeyed in all its terms, unless modified or set aside by an appeal through the courts. Seat v. Jones, supra; Watkins v. Huff, supra; Pearsall v. Wools, supra.

(4) We believe that respondents, appellees here, have correctly construed the legal effect of the order of the state superintendent as affirmed by the state board of education, in their following allegation, which is the ninth paragraph of their answer:

"Taking into consideration the subject-matter of the purported litigation then pending before Hon. S. M. N. Marrs and the said state board of education, and the facts germane thereto, and the law with reference to the duties of school trustees and school authorities generally, it is believed that a proper construction of the order made by the said state superintendent and the state board of education when they stated that said building be located as nearly as possible one-half way between the town of Hull and the town of Daisetta, it was simply meant that it should be located at such point or as near thereto as, in the judgment and discretion of the board of school trustees of said district, would be a practical location for said building and would be to the best interest of the children and the patrons of the schools in said district and the legal and correct construction of said order, if it be an order and the purpose and intent thereof, was to relegate the question of the location of this high school building to the sound discretion of the board of school trustees of said district, where it is lodged in any event under the law."

[5] (5) In view of the construction given to us by the order of the state superintendent, such order was not void as being too indefinite or uncertain, but was in the nature of a final decision or judgment of the Supreme Court of this state, reversing and remanding a cause to the lower court with specific instructions as to the disposition of the issues to be retried. The order of the state superintendent was a final and binding decree on all the parties and citizens of the Hull independent school district, and when entered it became the duty of respondents to obey its terms or to prosecute an appeal to the courts for relief against it.

[6] (6) We have examined respondents' answer most carefully, and have concluded that it is in no sense an appeal from or a direct attack against such order, but that they seek to avoid its effect by denying the jurisdiction of the board to enter it, and by alleging that it was too indefinite and uncertain for enforcement. Further it is our conclusion that the trial court did not construe respondents' answer as a direct attack or an appeal from the order of the state superintendent, and that in entering his judgment herein he did not purport to vacate said order, and that there is nothing in his judgment which would require it to be given that construction.

[7] (7) Under our construction of the order of the board of education, respondents were without authority to dedicate the Humble tract of four acres in Daisetta to high school purposes, and their discretion to invest the funds of the bond issue in a high school building to be erected on such lot was taken from them. Respondents rested under the duty of locating the school in the spirit of the order of the state board of education under the construction which they themselves have pleaded. The facts of this case clearly show that respondents made no effort under the terms of the order of the state superintendent to locate the high school building at any place between Hull and Daisetta, but, ignoring the order of their superiors, proceeded to erect the school building on the same site that they had designated at all times during the controversy, and which had been condemned by their superiors. Only on a showing that no site more available and equally convenient to the citizens of Hull and the citizens of Daisetta could be secured would the board have had authority to proceed with the erection of the high school building on the Humble tract. No such issue was pleaded by them, no such issue was raised by the facts, and the court trying this case made no such finding.

(8) It follows then that the respondents were without authority to let the contract for a building on the Humble tract, and, it appearing from the record in this case that Andrew Ness, who appeared before us as amicus curiæ, knew at the time he entered into the contract with respondents of this pending litigation and of the controversy between the two towns, and of the decision of the board of education, or by the exercise of any degree of care could have known thereof, was not an innocent contractor, and was not entitled to relief from his ill-advised contract.

(9) Our order heretofore made, overruling his motion to dissolve our injunction, is sustained and his motion for rehearing is overruled. The motion of respondents to dissolve the injunction is also overruled.

(10) Respondents' motion to dismiss the appeal on the ground that the subject-matter of this suit was dissipated by reason of the contract between them and Andrew Ness is denied. In our judgment that contract

would not have the effect to appropriate the funds of the district to the erection of a high school building on the Humble tract. The board was without authority, at the time the contract was entered into, to make such order, of which Andrew Ness was advised in fact or in law.

(11) The trial court properly granted the temporary injunction restraining respondents from the erection of the high school building on the Humble tract, but erred in dissolving such injunction on the final hearing of the cause before him. As the school authorities are without jurisdiction to enforce their final decree, this can only be done by the courts, and it becomes their duty to do so by the proper writs when it is made to appear to them that such orders are being disobeyed by those to whom they are directed.

From what we have said, it follows that the judgment of the trial court herein must be in all things reversed, and this cause remanded for a new trial.

Because of the importance of this issue to the citizens of the Hull independent district, we direct that the trial court enter such orders as will require respondents to execute the orders of the state board of education in the spirit of the construction placed by them upon such orders in the ninth paragraph of their answer, as given supra, and that the execution of this order be reviewed by such trial court as an issue of fact, within the principles announced in Donna School District v. Bank (Tex. Civ. App.) 227 S. W. 974; that is, that an exercise of their discretion in locating the school as near as practicable between the two towns will be final and binding upon all interested parties, unless it clearly appears that they have abused their discretion in exercising the authority vested in them. We believe that a location of the school on the Humble tract, in view of the decision of the state board of education, would, as a matter of law, be an abuse of such discretion, unless it is made to appear by pleading and proof that no other proper site is available. This question would present an issue of fact to the jury.

## On Appellees' Motion for Rehearing.

Appellees ably contend that appellants' petition was subject to a general demurrer. On this point they advance the following proposition:

"The appellants sued for a mandamus to compel the performance of an official duty by appellees; therefore upon appellants rested the burden of affirmatively pleading and proving the facts entitling them to such a writ, and their petition was deficient because failing to negative every possible defense or proposition that appellees might urge in opposing the application for mandamus; and furthermore the evidence failed to clearly establish appellants' alleged right to a mandamus, and at least left

their claim of right to such a writ in doubt, and hence the trial court was correct in refusing to issue a writ of mandamus and in dissolving the temporary injunction which had been granted."

[8, 9] Beyond question, appellees have advanced a correct legal proposition. The burden rested upon appellants to plead affirmatively and prove affirmatively all facts necessary to entitle them to the writ prayed for; also, both by pleading and proof, appellants were required to negative all defensive facts. Railway Co. v. Randolph, 24 Tex. 329; Bledsoe v. Railway Co., 40 Tex. 564; De Poyster v. Baker, 89 Tex. 159, 34 S. W. 106; Bank v. March (Tex. Civ. App.) 51 S. W. 267; Johnson v. Elliott (Tex. Civ. App.) 168 S. W. 972. We think appellants have met the burden imposed upon them by the foregoing authorities. As the subject-matter of this litigation was properly reviewed by the state superintendent and those with authority to review his decisions, and as a final order was entered by them on issues thus made, we must presume that they determined all fact issues in favor of that judgment. The school board had undertaken to locate the school building on the Humble four-acre tract. Appellants controverted their decision and those in authority in school matters —with the authority "to say the last word" —condemned this act of appellees, and by legal order directed them to locate the school at a point as near as possible one-half way between the town of Hull and the town of Daisetta. Until modified or set aside by a court of competent jurisdiction, this order was binding on all interested parties, and the pleading of this order—as a binding judgment—had the legal effect of not only showing an affirmative right to the writ, but of negativing all defenses against the writ. Not until it had set aside this order did the trial court have jurisdiction to determine de novo the issue whether the school board had abused its discretion in locating the school on the Humble four-acre tract. The order of the state board of education eliminated that tract from the consideration of the board, and in support of this order we must presume the state superintendent heard and determined against appellees every fact that would have justified them in locating the school on that tract.

As we have said, the only way to obviate this order was to attack it directly, remove it as a bar to their rights, and appellees concede that they made no such attack in the lower court; at least, they have assigned no error on this rehearing against our construction of their answer, to the effect that it was not a direct attack on the order of the state superintendent.

Reverting again to appellees' proposition that appellants' petition was subject to a

general demurrer, appellees say that we have conceded that it did not negative all necessary defenses by permitting an attack on a retrial by pleading and proving "that no other proper site is available." Such an issue would not be collateral to the order of the state superintendent, but would be in the nature of a direct attack, and because of the great public importance of this question, though not asked nor made an issue on this appeal, we believe that to the extent permitted in the closing paragraph of our original opinion, appellees should now be permitted to attack directly the order of the state superintendent.

But appellees say that under the construction placed by us on the order of the state superintendent, it was permissible for them to show in this case that, in locating the school on the Humble four-acre tract, they have duly executed the order of the state superintendent. We do not think that position is tenable, because no such issue was pleaded. Appellees have not sought to justify their act in locating the school on the four-acre tract, after the order of the state superintendent was duly entered, on the ground that it was a due execution of the order, but the entire burden of their evidence, as we construe it, was to show that as an original proposition, on the theory of a trial de novo, they were exercising a fair discretion in locating the school. This is made clear by the testimony of J. W. Canter, one of the trustees:

"I am frank to say that I never personally seriously considered any other location except the Humble four-acre tract."

This was his explanation of the manner in which he was obeying the order of his superiors. Even if appellees had raised this issue by their plea, the evidence does not sustain them on their proposition now advanced that they were in the due exercise of the discretion vested in them by the order of the state superintendent when they relocated the building on the Humble four-acre tract.

Again, it is our duty to look to the pleadings of both parties in determining whether the issues were properly presented to the trial court. Appellees say that appellants' petition was subject to a general demurrer because it did not negative all possible defenses against the issuance of the writ. Now, when we look to their answer, we find that they have advanced no defense against the cause of action as stated by appellants, which, in law, would bar appellants' right to the writ. Thus, when we construe all the pleadings together, there is no showing made to us that any legal defense was offered against appellants' prayer.

The motion for rehearing is in all things overruled.